Security. Thank you. Morning. Morning, Your Honors. May it please the Court. My name is Christopher Bose. I'm the attorney for Plaintiff Appellant Van Stone. The issue in this case is not whether Van Stone is psychiatrically disabled by major depression, but when he became disabled by major depression. And how do we know that when he wasn't seeking treatment? I mean, what would you have the administrative judge do? It's clear that the administrative law judge had an obligation to recontact the treating  But he wasn't being treated during most of this period. This Court has held that a retrospective opinion from a treating physician can be controlling on the issue of whether an individual was disabled at an earlier date. I understand what the law says, but he didn't have a treating physician for most of this period. And that's always true in the cases, not always true, but sometimes it's true in the cases where a psychiatrically disabled individual doesn't get the treatment that they need. Or in this case, he did seek treatment, he just didn't get psychiatric treatment in 2010 when he was fired from his job because he didn't have insurance once he was discharged from his job. And that's clear from the So what would, if we told the administrative law judge that it had to get this retrospective analysis, from whence would it come? Who would do it? Dr. Garza at the time of the hearing. But Dr. Garza didn't see this patient until very far into the proceedings. Dr. Garza came on when? Toward the end of his treatment, right? That's correct. To that, 2014, March of 2014, Dr. Garza is, or November of 2013, Dr. Garza is treating Mr. Stone. Mr. Stone later is hospitalized at Columbia Presbyterian in June of 2014 because the cable television repairman calls the police and says, this guy is depressed, he was talking about suicide. Mr. Stone doesn't have the good insight that he should have to figure out when he should go to the emergency room. He was dragged to the emergency room by the police at the suggestion of someone who came into his home and realized that something was askew. Mr. Stone had been crying out for help, he had sought treatment, he thought he just needed psychiatric medications, Paxil, and his primary care physician, actually a nurse practitioner, did prescribe that. We see later on when Dr. Garza starts to treat Mr. Stone, Dr. Garza says, he's medication resistant, we have to try many different things to get him to the right level of optimal treatment. And that's at a point where the judge agrees, while on medication, he's disabled. We can, and the commissioner in Social Security ruling 8320 says, you can infer an earlier onset date in impairments of non-traumatic disorders. And that happens regularly in the Social Security Administration. It's set out that there may not be records of treatment as of the onset date that the person alleges or at minimum, as in this case, the date last insured of September 30th, 2011. If Mr. Stone shows disability as of that date, he's entitled to the disability insurance benefit. And the ruling is clear. There's a blueprint for what the administrative law judge is supposed to do in that instance. But this court has also held that in Rosa, simply if the administrative law judge had simply reached out to the treating source to clarify an issue, it would have filled the gap that was necessary. The administrative law judge here failed to realize that the critical issue is the date last insured. It seems she understood that. But it seemed that she didn't understand that a retrospective diagnosis was a tool at the disposal of her and the treating source physician, Dr. Garza, who she accepted. She accepted his opinion completely in finding that Mr. Stone was disabled as of June 29th, 2013, a date that has no medical relevance whatsoever, right? Under her decision, he's not disabled. He doesn't even have a severe impairment under the Social Security rules the way that they characterized it on June 28th, 2013. But the next day, he's completely disabled. There's nothing in the file that supports that. The judge is supposed to, under Social Security ruling 8320, is supposed to look for the correct onset date. And this court has repeatedly held that a treating physician, a specialist, in this case Dr. Garza is the psychiatric specialist, can go back and say, based upon the character of this person's presentation, they were disabled all along. And this does happen. It happens in many cases. I know, but there were no records on which he could draw those inferences. There's a history that he was, that's not disputed. Mr. Stone says he was hospitalized in November of 2006 at Columbia Presbyterian. Those records either were not available or they weren't requested. He testifies he has a lifelong history of depression, passively suicidal since the age of seven, saying that it would be okay if I didn't wake up in the morning. This is something that he's dealt with his whole life. For what it's worth, he has a family history. Apparently a grandmother, an uncle, and a cousin have all committed suicide in one side of the family. And he, according to him, he's dealt with this his whole life. There's a letter from his pastor saying that in August of 2010, Mr. Stone was inconsolable, having lost his job as a flight attendant. And his testimony at the hearing is that he only now understands what was going on back then and he attributes it to his depression. Social Security ruling tells us that we start with the date alleged by the individual. We look at their work history. Sometimes the work record can tell us what happened. In this case, he was fired. There's no dispute that Delta fired him for poor performance. The documents setting that out are in the file. He says that his life fell apart in the spring of 2010. He had a series of bad decisions. We know he was trying to get psychiatric treatment from Dr. Docku. We know that once he does present to a psychiatrist, first the consultative psychiatrist says that in 2013, associated with the claims, September 2013, that doctor says this person has moderate to marked limitations dealing with other people. Dr. Garza, of course, says kind of the same thing, a little bit more emphatic. Judge accepts that. Judge was obligated to at least tell Mr. Stone, by the way, you should go to your treating doctor and ask him whether or not your disability began as of September of 2011. The case for that is Cruz. This court determined that if the ALJ doesn't do what they're supposed to do to develop the record, they should at least advise the claimant what was necessary to prove their claim. All right, thank you. You've reserved some time for rebuttal. We'll hear from the commissioner. May it please the court. Amanda Parcells for the- You can pull that down or do whatever so we can hear you a little better. Okay, good, thanks. Thank you, your honor. Amanda Parcells for the Commissioner of Social Security. The commissioner properly denied Mr. Stone's disability insurance claim here because he failed to meet his burden of proof to show that his depression and seasonal affective disorder was disabling prior to his date last insured. Once the ALJ rendered a fully favorable- One of those slowly progressing illnesses? This isn't a continually progressive illness. Mr. Stone had a long standing history of depression that were ups and downs. Many years he was fully functioning, able to work in skilled professions. He was a teacher. He was fully functioning just because he wasn't going to see a doctor? He was in fact going to see a doctor here. His treatment was managed by his internist who monitored his depression and his mood. And those contemporaneous treatment records from 2010 and 2011 were available to the ALJ. And showed that his symptoms were responding well to antidepressants. That he slept well, that he was feeling good, that he was doing better. He denied any suicidal ideation. He had negative mental status findings like non-pressured speech and goal oriented speech. This was a sufficient record for the ALJ to make a decision about his functional limitations during 2010 and 2011. And that's why there was no need for any further retrospective opinions from Dr. Garza who as the court noted had not even met Mr. Stone at this point, the relevant time period, who didn't meet him until years later. And would have had little if any basis other than those records to opine about his functioning years before. Particularly when the record does. The law, the regulations, and the case law seems to require the ALJ to figure out to get someone to draw the inference of onset, doesn't it? No, your honor. First, I would say with respect to SSR 8320, which has since been rescinded by the agency. To clarify that a medical expert is never required to obtain an onset date. In this case, the ALJ can infer an onset date without a medical expert's testimony if there is a sufficient record. The cases cited by the plaintiff involve the absence of treatment records or a situation where the ALJ relied on the ambiguity in the record to find an arbitrary onset date. Here, once the SSI claim was determined favorably, the only question was whether Mr. Stone was disabled prior to his date last insured. This is an issue raised in every disability insurance benefits claim. And it was well within the ALJ's discretion to determine this based on the contemporaneous medical records. Mr. Stone's own testimony that he always ate well, slept well, took care of his personal hygiene, managed his household activities, and was independent in his activities of daily living. Among the, in addition to the treatment records and his activities in seeking to appeal his suspension, his ability to take public transportation, to go on job interviews, all of this was substantial evidence that he was not suffering from debilitating depression in 2010 and 2011. So this is not a case where there was an absence of treatment or an absence of evidence. The ALJ relied on the presence of evidence that his depression was not one of the situations where it was severe and preventing him from working. Indeed, the records from 2010 and 2011 showed that he himself reported that he was feeling similar to prior episodes when he felt the winter blues, when he was still able to work as a flight attendant and previously as a school teacher. And the visit, as counsel alluded, to Dr. Dacu in April 2008, where he talks about his depression? That's correct, Your Honor. In 2008, he was still working full-time as a flight attendant. He worked as a flight attendant for two more years after that through June 2010. And so that consistency between the period when he was able to work and his symptoms continued roughly the same from 2008 to 2010 and then continued 2010 to 2011 was also evidence that the ALJ found supported the finding that his depression was not severe during this time period. He was able to hold his job? Yes, Your Honor, among other things. Maintain his personal hygiene, maintain his household activities, among a number of other things. And the records themselves show in 2010 when he's complaining about, you know, being suspended from his job. He also had a breakup with his significant other and that his life was falling apart. He continued to deny symptoms of depression other than being lethargic and tired. He said he was having good control. He said he was feeling good and doing well. So you can look to these treatment records to infer that Mr. Stone was not disabled prior to his date last insured. And I point the court to its decision in Perez v. Chater which addressed a similar situation where there were treatment records available from the disability insurance time period and the court held that it was not required to find a retrospective opinion from doctors who treated the claimant after the date last insured. And in that case, there wasn't a functional assessment from the doctor who treated them during the relevant period. It was medical records and a report that just stated the diagnosis and the relatively minor objective clinical findings. And those are similar to Nurse Aries and Dr. Docu's notes here, which showed that his mood was good, that his antidepressants were working during this period, and that his depression... he would take them and they would stop working. Doesn't that show the presence of disease during that period? He did have depressive disease during that period, but they were under control according to the medical records. Okay, it does, the record does show he had a long-standing history of depression, but there were long periods of time during his adult life when he was working, maintaining a job, he earned a bachelor's degree, a master's degree, he lived abroad, and there's no indication that his depression prevented him from working. And if we're looking just at the relevant time period, 2010 and 2011, the contemporaneous treatment records show that this was one of those time periods where despite significant life stressors of losing his job and his significant other, he was still maintaining his good mood, his good sleep, and controlling his symptoms with antidepressants. The fact that he later deteriorated and during the SSI time period did become one of those periods where it was a down does not change the fact that he failed to show he was disabled during the relevant time period to the disability insurance benefits claim in 2010 and 2011. And therefore? And therefore, there was no need to further develop the record by obtaining yet another retrospective opinion. The ALJ did make thorough efforts to develop the record. She obtained an opinion from Dr. Garza about the time period he was qualified to opine about. But it didn't ask Dr. Garza to draw some inferences on the onset of the disease. That's true, but the ALJ was not required given the completeness of the record here. Well, that's what this case is about, right? Yes, Your Honor, and I think that the case law in Perez and the even SSR 8320 shows that this record allowed the ALJ to make a reasonable inference that Mr. Stone did not show his depression was disabling prior to his date last insured. Thank you. Mr. Bowes, you have retained three minutes for rebuttal. Thank you, Your Honor. I would say that the new ruling 18-1P, which does replace Social Security ruling 8320, says it's at the discretion of the administrative law judge to decide whether or not she would need a medical expert to understand the evidence. It's our position that if you have a case where the ALJ should have sought this information in the first instance from the treating source, which is what the regulations say, when that's prompted, it would be an abusive discretion for the ALJ not to obtain a medical advisor to help her understand and to instead then say, well, the treating doctor didn't reply or is unavailable. I'll take it upon myself to initially thought would be best addressed by a treating doctor. The new ruling is just a reformulation of the old ruling. The ruling says that Social Security expects the court to apply the ruling at the time of the adjudication, which of course is 8320 and is acknowledged by the commissioner. The evidence that the suggestion that the court should give that the ALJ was giving significant weight to the Mr. Stone's presentation to his primary care physician in 2010 and 11, I think has to give way to the case law, which in the case of Blankenship, which is cited in our case, the concept that a mentally impaired individual is not the best person to judge the level of their own impairment. But what else do we have but self-reporting? Dr. Garza, we have a line of cases, including Wagner, which says that, oh, when a treating specialist later comes into the picture and issues an opinion that reaches back in time and says, oh, I understand what was going on here based upon my understanding, my expertise as a specialist and my understanding. What about opposing counsel's argument that he had good periods and bad periods? What about that? That makes our case, I think, of someone with lifelong depression. He has ups and downs. And June and August of 2010 was a down period that has never come back. He's been acknowledged to be disabled as of 2013 on the strength of the specialist getting to actually start to see psychiatric treatment. He denied that he was depressed. He didn't seek help when people said, oh, you know what? You're suicidal, and you should go to the hospital. So that's the type of person we're dealing with. Lastly, the reliance on the Perez versus Chater case, I think, is inappropriate, because in that case, there was a treating physician statement during the relevant period of time, I think contemporaneous, that the individual had the ability to do sedentary work. And therefore, the administrative law judge correctly relied upon that. There was no additional obligation for a new, later acquired physician to get an opinion from them when that record was properly developed. That's not the case here. Thank you. Thank you both. We'll reserve decision.